We're going to move now to Case 7. This is Appeal 22-1842, Brandon Klein v. Town of Schererville et al. And we're going to hear first from Mr. Saville. Thank you, Your Honor. May it please the Court, my name is Scott Saville. I represent the appellant, Brandon Klein. Your Honor, a decision for the appellee here would overturn a substantial amount of precedent from this Court. First, Your Honor, an officer violates the Fourth Amendment when he intentionally or recklessly includes material false statements in a probable cause affidavit. This is Hart v. Medina. Here, there were definitely false statements included by the officer in this matter. He included statements that he had read the protective order and that the protective order contained language specifically preventing communication between the then spouses. That was not true. And that's because they had just had the child together. Yes, they had had a child together a few months prior. And so the protective order did not include language preventing communications. However, the officer said that he had read it and that it did include that information. Further, when he was filling out his probable cause affidavit, he failed to include materially exculpatory information. And this is perhaps the most egregious issue. The officer at the time, in his own affidavit before the district court, had stated that he had reviewed the paper order, the physical judge's order at the time, and that he had made note prior to filling out his probable cause affidavit that this did not contain a restriction on communication. He then checked a database entry, and it did have an item stating that there was a restriction on communication. So he has these two sources, an abridged database entry and a physical judge's order that has all the detail that has no restriction on communication between the spouses. And he elected to include the information from the database entry. And in his probable cause affidavit, it makes no mention of the fact that he had this conflict, makes no mention of the fact that there was no restriction on communication, which he himself admits in his affidavit he was aware of. This is obviously materially exculpatory information, and as soon as it was raised with the criminal court, the matter was dismissed out of hand because, of course, there was no restriction of that type, and there was therefore no invasion of privacy, and there could be no probable cause. The issue here being that instead of including that exculpatory information, which it is material under Rainsberger analysis, instead of including that exculpatory information that the judge's order doesn't appear to have this restriction, he completely ignored it and left off this highly exculpatory information from his probable cause affidavit and instead relied entirely on a database entry. Now the interesting thing here, and again we look at what a reasonable officer would have done or known at the time, well, a reasonable officer would have known at the time that the database entry that we're referencing here, one, is a very abridged item, but two, it contains a warning directly above and below that entry. In asterisks, all caps, do not arrest or detain based on this information. Again, the reasonable officer would not have chosen to apply that entry instead of a judge-signed physical order and say that's the entry I'm going with in my probable cause affidavit, that's the entry I'm going to work with in this matter, and instead will have only that and not describe at all the fact that there was an exculpatory item out there, which was the judge-signed order. So he opted to ignore the warning, ignore what was in that database of itself, and here I like to think there's some reference that's been made to, well, he's allowed to rely on a database. I'd like to just provide a little analogy. If my wife says, hey, can you go to the grocery store, and I say, well, where is it at, and she says, go two stoplights down and turn left, and I instead go three stoplights down and turn right, I can't be said to have relied upon her directions when I failed to get to the grocery store. Similarly, this officer in this circumstance did not rely on this database. If he had, he would have followed its instruction not to arrest or detain on this. Further, this is not a matter of exigent circumstances where the officer is arresting on the spot. This was a probable cause affidavit filled out the day after the complaining witness came in, again, the complainant being the other spouse, filled out the day after, after he's had an opportunity, and this is not a case where we're asking him to do an investigation. He already, by his own admission in his affidavit, had already seen the probable cause, had already seen the protective order, the physical protective order that had no restriction on communication. Counsel, how is the information in the database derived? How does it get in there? Your Honor, I'm not entirely sure. My understanding is that this is information that's collated from numerous sources, but I'm not sure how the information arrives in the database in the first place. It does say not to arrest based on this information and instead to contact the issuing agency for the order. So this was something that, again, had he been relying on that order, had he been following the database, had he been relying on the database, he would have followed that instruction. He did not. So do you know whether or not, for example, when information is collected for the database, someone actually goes and looks at the actual order entered by the court to figure out what information should be entered? I don't believe that would be the case, Your Honor, because if it was, the physical order from the court does not have that restriction in it. It's more likely that this is something which is just, if you look at the blurb, it's a very small subset. Protective orders in the state of Indiana are very codified, where they have a series of numbered paragraphs that are usually the same from one order to the next, with some being omitted based on certain circumstances, such as communications, or some are about family pets and things like that, and some being included. So it's possible the NAs that were here, one of those might have made reference to communication. Yes, exactly. Only in this particular instance, there is no reference to communication in the physical order. And again, the officer involved specifically states that he had reviewed that physical order, and not only that he reviewed it, but he noted that it did not contain a restriction on communication at the time. Give us your thoughts on qualified immunity. Qualified immunity. Yes, Your Honor. So qualified immunity in this instance, there are a few things. First, it looks at the totality of the circumstances that a reasonable officer would have applied at the time, but also it looks at, in the context of a probable cause affidavit, whether or not in creating that probable cause affidavit and crafting it, the officer included information that he knew or should have known, recklessly included information that was false. Here he did. It also looks at whether or not an officer recklessly omitted information which would be materially exculpatory under Reinsberger. And here he did that as well. We have a situation where the information that he's included, which he should not have, was that the order contained information that it did not contain, and that he knew it did not contain based on the physical order, and he admits as much in his own affidavit. Secondly, we have an issue where he failed to include exculpatory information, which would have negated the whole need for this proceeding, because had he included that there was a judge's order that did not include this restriction, even if he'd included both and said, well, I have these two entries. I have a database entry that says this, and I have a judge's order that does not contain that. Had he included both of those items in his probable cause affidavit, there is every reason to believe that at that point he would never have been subjected to arrest, that Mr. Klein would never have been arrested, never had an issue where he lost a job, would never have suffered any of these issues. So, counsel, I guess I just want to clarify. I'm not sure what your position is on this. Are you saying that you were entitled to – that there were enough facts for you to be entitled to judgment on summary judgment, or do you think that's an issue that should have gone to the jury? Your Honor, we were contemplating filing summary judgment when the court's order came out because we believe that the facts are conclusive. We believe that in a matter where the officer involved has admitted to that knowledge and then gone on to admit that he then didn't include this information. But he didn't file a motion for summary judgment? We did not at this time, no. But we believe that the district court in this case – we think that there might even have just been – this may be a case of simple mistake where the district court, based on some of the information we saw in the order, it may have mistakenly believed that we were arguing that this paper order was something that he should have looked at prior to filling out the probable cause affidavit rather than this was something which he in fact had admitted he looked at prior to creating his probable cause affidavit. On the QI issue, it's obviously a matter for the court. There are certain instances, however, when a case has got to be remanded for certain facts to be found before the court can make that qualified immunity call. Is it the plaintiff appellant's position that qualified immunity determination can be made as a matter of law in this court, or does it have to go back for any facts to be found? We believe that the facts are fairly straightforward in this instance and that it can be made in this court, Your Honor. With respect, I'd like to reserve my last moment. That's fine. Thank you, Mr. Seville. We're now going to move to counsel for the appellee, Ms. Barron. Good morning. May it please the court, Lisa Barron on behalf of defendant appellees, Anthony Bonadonna in the town of Cherville, Indiana. I'll begin with addressing several of the questions that were directed to opposing counsel. I'll probably start in a little bit of a reverse order, but the district court was not confused about what the plaintiff argued below. The district court also had all of the facts in this case. In particular, what I think the plaintiff has been omitting is a significant fact in this case. In this instance, before Officer Bonadonna filled out his probable cause affidavit, he spoke with the complainant, Ms. Saladas, the ex-wife who had procured the ex parte order of protection. In doing so, he spoke with her and she advised him, I filled out this order of protection. He's not supposed to be communicating with me. He contacted me via email. The contents of the email were shown to Officer Bonadonna. He looked at them. She also reported to Officer Bonadonna that he had been contacting her earlier in the day at her place of work. But she was not being truthful? Whether or not she was being truthful at that moment, Officer Bonadonna didn't have any reason to dispute what she was saying. But he would have when he read the protective order, correct? The next step, Judge, is that he went and pulled a paper copy of the protective order to verify what he had been told by Ms. Saladas in person as he interviewed her. When he went and pulled that order of protection, he saw on there what we've designated in this case is a copy of the order and it has N-A-N-A. And when he saw that, he thought this is unusual in Officer Bonadonna's experience in handling orders of protection, especially against ex-spouses at the time when she procured it. He said this is something that's not unusual. There was routinely a prohibition on communication. Let me go look at another source. Do we know from Officer Bonadonna whether or not Ms. Saladas brought up the fact that they shared a very young child? As far as Officer Bonadonna was told, and there's a copy of his report attached to his affidavit which has been submitted, she didn't share that part of information with him. He wouldn't have had any knowledge of it. He just indicated that all she portrayed to him was that she had this order of protection against her ex-husband or whatever their status, they're separated at the time. There was no mention. I don't believe to the extent that Officer Bonadonna understood that there was a child. And also, it's my understanding that the child at the time that this order was procured was either right at the time the child was born or shortly days after the day before. The day before she applied for it, right? Yes. And Ms. Barron, there's no question that you're correct that a vast majority of these types of protective orders are going to contain a no communication clause. So let's presume that Officer Bonadonna was being reasonable in concluding, wait a minute, I've got contradictory information. Most of these have a no communication clause. Based on my experience, which is unclear, somewhere between 1 and 1,000 cases, that this is a circumstance where there shouldn't have been communication. Isn't the presumption, though, against arrest? It seems to me like there was almost a presumption here for arrest as a result of Officer Bonadonna's experience in his inference that there should have been a communication order. I've seen the email. Therefore, I have to go arrest him. Your thoughts? Well, I would disagree with the presumption of arrest position in that Officer Bonadonna took the information, and I believe he was interpreted as I'm having conflicting information, and I need to go look at another source. So I'm going to have a triple I as a criminal background search, which is performed routinely by law enforcement, and it's run through the Indiana Data and Communication System, or IDACS, which is another legal database that law enforcement does rely on customarily and routinely. And where does that information come from? It is my understanding, based on what Officer Bonadonna testified to and what he put in his affidavit in this case, that that information is compiled, and it's supposed to be a verbatim. My understanding, it's either input by a person. It's not some electronic system that's grabbing the information, especially back in 2015 when this case took place. It's supposed to take a verbatim copy of judge-signed orders or any pleadings that are pertinent to that individual. In this case, it would be the protective order, and it's supposed to put a verbatim copy of what exactly it says into the database. So, for example, when Officer Bonadonna is out on patrol, he can pull it up on his in-car laptop and see exactly what it says in that instance when he's not able to physically go retrieve a paper copy. Here, did Officer Bonadonna have the order of protection? He was able to review the paper version of the order of protection at the town of Cherville. Did the facts, as developed below, indicate that Officer Bonadonna knew that a child was involved? As far as what Officer Bonadonna testified, I don't believe that he was aware of the situation with whether there was a child involved or anything beyond what he looked at, which would have been… I just wonder if there was any record where Ms. Salidas said, we have a child together because no communication orders are, I would think, impossible when you have children together. Understandably so. I'm not personally familiar with them. However, I can only go with what the record has here, and it was Officer Bonadonna's general understanding that these types of protective orders routinely prohibit communication, and in this instance he was… They do. They do. I'm very familiar with these. They do in their boyfriend-girlfriend situations, right? When there's a child involved, though, it's a totally different situation because you can't have visitation rights, you can't have anything if you're not having any form of communication. Or, I guess, it's very, very difficult to have no communication with someone with whom you have a child. And I have the same concerns Judge Brennan expressed regarding Officer Bonadonna's investigation here. It looks like he has the protective order, which says one thing, and then he looks at a computer-generated system, which is supposed to pull information from the protective order. At least that's what Officer Bonadonna said. And they're clearly consistent. But he relied upon and put in the probable cause affidavit the information that was contained on the computer system, which was supposed to come from the protective order, which was right there in front of him. Correct. Those are the facts in this case, but we can only look at this through the lens of an objective…  But wouldn't a reasonable officer think that a magistrate judge or the judge that's going to issue the warrant would like that information? Rather than looking at the affidavit, as Judge Brennan referred to it, it says the above document, i.e. the protective order, signed by a judge and filed in open court, ordered the accused to and does not communicate. That's a pretty clear statement. And wouldn't a reasonable officer think to him or herself, well, given this discrepancy, I think an arrest should still be made here, but I should let the judge know that there's kind of this discrepancy in the system, as opposed to telling the judge that there isn't. In fact, it would be different if he said, based upon my review of the database, there is no communication order or there is a no communication order. That would at least allow the reviewing judge to inquire, well, what about the order itself, which certainly a judge would have done. But the statement leaves the judge no indication or no reason to make that further inquiry. Understandably, looking at the actual probable cause affidavit, which is a series of fill in the blanks and check the spots, but that's the representation. I mean, it's just not a simple affidavit. This is the representation that he is making to the judicial officer to obtain an arrest warrant, right? Correct. And so wouldn't a reasonable officer try to do everything that he or she could, particularly when they're signing it under pains and penalties of perjury, to make sure that each and every statement is true and correct? Under the circumstances, Officer Bonadonna did everything that he could at the time to obtain all of the information, and he took that into consideration, which is why this case is something that falls into reasonable mistaken belief to the extent that he got this wrong for purposes of qualified immunity. He listened to the complainant. But how is his statement, how is his signed statement under penalty of perjury that the protective order contained this prohibition, how is that a reasonable interpretation of the protective order when it's not in there? It's reasonable under the circumstances of this case in light of the fact that he looked at another document that was supposed to be verbatim what is contained in the protective order. This is understanding that there was an error in the paper copy that they received or that it was an incomplete version. But the database was based upon the paper copy, right? I see my time has elapsed. May I answer your question? Yes. Yes, the database is supposed to reflect exactly what the paper copy says, but the database said communication was prohibited. Ms. Barron, the defense here is of a position with regard to materiality. Is there any dispute that this type of information was material to the determination as to whether arrest or not? In looking at whether we get to whether the statements that counsel is characterizing as false statements or reckless statements, I don't think we get there because we think we have to look at all of the steps that led up to Officer Bondadonna putting together what he did in the probable cause affidavit. He formed a reasonable belief prior to writing it that the terms of the order had been violated through the actions that were relayed to him. And it is for those reasons that he is entitled to qualified immunity because it does encompass things such as this where we have a reasonable but mistaken belief. Similar question that I posed to Mr. Seville with regard to QI then. Is this something that you believe can be determined as a matter of law at this court or does it require remand for some facts to be found? I believe that this issue can be determined as a matter of law and I believe that the district court set forth a significant basis for why it determined the things that it did at summary judgment. Judge Lee. Yes. So I just want to make sure I understand. So if there is a factual dispute upon which the issue of qualified immunity hinges, you believe that this court has the authority to resolve that factual dispute rather than having that factual dispute resolved by a jury and then applied to qualified immunity by the district court judge? Judge, I don't believe the facts in this case are disputed. No, I know, but I understand your position. But I guess if you can answer my question, if there is a factual dispute here, let's say I think there is a factual dispute. Are you saying that we as the public court have the authority to resolve that factual dispute so long as it deals with qualified immunity? What I am saying is that a factual dispute, if there is a factual dispute, then perhaps a remand would be appropriate for it to be decided by a jury since factual disputes aren't supposed to be decided on appeal. Thank you. Thank you. Mr. Saville, we kept Ms. Barron up, so we're going to give you three minutes of rebuttal. Your Honor, just very briefly, Your Honor, I would call the court's attention to appellate brief. There's RA 29 was in the appellate volume. The court has asked previously whether or not Officer Bonadonna knew there was a child involved at the time. It says in his own affidavit, Ms. Saladas reported that plaintiff had called her place of employment alleging there was an emergency with their child. It further goes on to say Ms. Saladas showed me a copy of the email from plaintiff which talked about their child. So Officer Bonadonna was on notice that there was a child involved in this circumstance at the time that he crafted his probable cause affidavit. I have nothing further, Your Honor. Mr. Saville, let me ask you the same hypothetical, I ask counsel. If, assuming hypothetically, there were a factual dispute here with regard upon which the issue of qualified immunity would hinge, okay, what is your position as to whether or not this court has the authority to resolve that factual dispute or whether that's something that a jury has to decide so that the district court can then apply the qualified immunity analysis? Your Honor, I believe the jury would have to determine as a finder of fact what the result of that factual dispute was in order for the district court judge to make a final determination. Thank you. Thank you, Your Honor. Thank you, Mr. Saville. Thank you, Ms. Barron. The case will be taken under revisement.